IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PIW TSG, LLC, a Delaware limited
liability company,

               Plaintiff,

   v.

KERR CONTRACTORS, INC., an
Oregon corporation; OREGON MINING
AND AG FABRICATION, an Oregon
corporation; and BRENT KERR, an
individual,

               Defendants.

Case No. 3:25-cv-00591-AB

OPINION & ORDER

Clarens J. Emrich
Jeanne F. Loftis
Baker Sterchi Cowden & Rice, LLC
2100 Westlake Ave., N. Suite 206
Seattle, WA 98109

Aaron Chausmer
Henry C. DeBardeleben, IV
Weinberg, Wheeler, Hudgins, Gunn and Dial
3344 Peachtree Road, NE Suite 2400
Atlanta, GA 30326

      Attorneys for Plaintiff

Brooke M. Eide
Timothy J. Resch
Samuels Yoelin Kantor LLP
111 SW Fifth Avenue, Suite 3800
Portland, OR 97204

      Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiff PIW TSG, LLC, brings this case against Defendants Kerr Contractors, Inc. ("KCI"), Oregon Mining and AG Fabrication ("OMAF"), and Brent Kerr.[1] Plaintiff alleges breach of contract, alter ego, tortious interference with business relations, misappropriation of confidential information, conversion of confidential information, and unjust enrichment. Am. Compl. ¶¶ 107–35, 145–87, ECF No. 25. Plaintiff also seeks a declaratory judgment. *Id.* ¶¶ 86–97. Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6). Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 29. For the following reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## BACKGROUND

Peninsula Iron Works ("PIW"), founded in 1917, was one of the largest machine shops on the West Coast, specializing in custom metal fabrication and welding services.

---

[1] The Court dismissed Defendants Blake Westling, Joel Vanderveen, and Adam Cuddeford from this action pursuant to the parties Joint Stipulation of Dismissal. *See* Order, ECF No. 36; Joint Stip. Dismissal, ECF No. 34. Accordingly, Defendants' Motion to Dismiss, as directed towards Westling, Vanderveen, and Cuddeford, is moot.

Am. Compl. ¶¶ 11, 30. Eventually, PIW "decided to sell the business." *Id.* ¶ 34. PIW retained

Meridian Capital LLC ("Meridian") to initiate confidential discussions with prospective buyers.

*Id.* ¶ 35. KCI and Plaintiff were two prospective buyers. Am. Compl. ¶¶ 36, 53.

On February 13, 2024, KCI and Meridian—on behalf of PIW—entered into a

confidentiality agreement (the "Due Diligence Agreement" or "Agreement") giving KCI access

to PIW's Confidential Information. *Id.* ¶¶ 37–38; Am. Compl. Ex. 1 ("Due Diligence

Agreement"), ECF No. 25-1. The Agreement defines PIW's Confidential Information as:

> [A]ny and all confidences, proprietary information, trade secrets, know-how, and
> other information not generally known to the public or in the industry or business
> in which [PIW] is engaged, which information concerns the business, affairs,
> finances, plans, personnel and operations of [PIW], as well as any projected or
> anticipated business or operations of [PIW].

Due Diligence Agreement § 1.

The Due Diligence Agreement restricts KCI and its Associated Persons, i.e., KCI's

"affiliates and . . . respective members, shareholders, directors, officers, employees, agents,

partners, and advisors . . . ." *Id.* § 2. Specifically, for a period of five years from the date of the

Agreement (the "Confidentiality Term"), KCI shall use PIW's Confidential Information "solely

in connection with its evaluation of" PIW and "[r]efrain from disclosing the Confidential

Information to any person, except any of its Associated Persons to whom or which disclosure is

necessary to assist [KCI] in evaluating the Confidential Information and" potential acquisition.

*Id.* § 3(A)–(B). "Associated Persons receiving Confidential Information shall be bound by and

subject to [the] Agreement to the same extent and effect as [KCI]." *Id.* § 3(B).

In addition, during the Confidentiality Term, KCI shall not:

> (a) hire or offer to hire, whether as an employee or consultant, any person employed
> by [PIW] with whom [KCI] had contact as part of its evaluation or investigation of
> [PIW] or whose identity is included in the Confidential Information, or (b)
> knowingly and purposefully use the Confidential Information to (i) solicit, directly

or indirectly, any customer of [PIW] for products or services that [PIW] manufactures, markets or provides, or (ii) encourage any such customer to terminate or reduce its relationship with [PIW].

*Id.* § 6. This restriction, however, does not preclude KCI from "employing any employee who (x) has been given notice of termination by [PIW] or chooses to leave the employment of [PIW], in either case without any prior communication with [KCI] respecting employment, and who makes an unsolicited approach to [KCI] with a view of obtaining employment . . . ." *Id.*

The Due Diligence Agreement is "intended solely for the benefit of the parties hereto and [PIW] and their respective successors and assigns[,]" and PIW "shall have the right to enforce against [KCI] any right that Meridian may have under [the] Agreement." *Id.* § 10.

During KCI's evaluation of PIW, Blake Westling—PIW's general manager—served as "key point of contact for KCI . . . ." Am. Compl. ¶¶ 47–48. Westling had served as PIW's general manager since 2016 and had "a long history of work in the industry developing contacts and close personal relationships." *Id.* ¶¶ 31–32. "Westling was keenly aware of PIW's customer relationships and business operations." *Id.* ¶ 33. Defendant Kerr, President of KCI, was also involved in KCI's evaluation of PIW and was in contact with Westling. *Id.* ¶¶ 15, 49. Kerr and KCI reviewed PIW's Confidential Information. *Id.* ¶¶ 49, 51. KCI also reviewed PIW's financials and customer lists, *id.* ¶ 51, and learned the identities of PIW employees, including Joel Vanderveen and Adam Cuddeford, *id.* ¶ 50.

KCI, however, did not acquire PIW. *Id.* ¶ 52. Instead, on May 31, 2024, Plaintiff "purchased all of PIW's assets, properties, goodwill, and rights, including the rights and benefits in the Due Diligence Agreement." *Id.* ¶ 53. Subsequently, Westling, Vanderveen, and Cuddeford (the "Employees") executed confidentiality agreements with Plaintiff (the "Employment Agreements"). *Id.* ¶¶ 56–58; *see* Am. Compl. Ex. 2, ECF No. 25-2 (Westling); Am. Compl. Ex.

3, ECF No. 25-3 (Cuddeford); Am. Compl. Ex. 4, ECF No. 25-4 (Vanderveen). The Employment Agreements provide that the Employees "agree to use PIW's confidential and proprietary information only in the course of [their] employment with PIW[,]" and that such obligations "survive the termination of [their] employment with PIW." Am. Compl. Exs. 2–4.

Less than two-and-a-half months after Westling signed his Employment Agreement, he resigned. Am. Compl. ¶ 59. And only three days later, Defendant OMAF—with Kerr acting as president—was registered with the Oregon Secretary of State. *Id.* ¶¶ 60–61. "OMAF specializes in metal fabrication and repair work" and, like PIW and Plaintiff, "operates in the metal fabrication industry serving customers in mining and agriculture." *Id.* ¶¶ 65–66. Since OMAF's inception, Westling has served as its general manager. *Id.* ¶ 62. Vanderveen and Cuddeford have also since resigned from their positions with Plaintiff and are working at OMAF. *Id.* ¶¶ 68, 79–80.

Plaintiff alleges that the Employees resigned from their positions with Plaintiff and were hired by OMAF following communications with KCI and/or Kerr "respecting OMAF and/or employment." *Id.* ¶¶ 63, 69, 81. Plaintiff specifically alleges that "Westling did not make an unsolicited approach to [Defendants] with a view of obtaining employment." *Id.* ¶ 64. More broadly, Plaintiff alleges that OMAF is an alter ego of KCI and/or Kerr, created to circumvent obligations under the Due Diligence Agreement. *Id.* ¶ 67. Plaintiff alleges that OMAF is using Plaintiff's former employees to solicit Plaintiff's customers. *Id.* ¶ 70. As a result, Plaintiff claims that it "has spent hundreds of hours recruiting and on-boarding new team members and creating processes to recreate efficiencies that were disrupted due to the loss of institutional knowledge and Confidential Information." *Id.* ¶ 83.

///

**STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**DISCUSSION**

Defendants move to dismiss this action for failure to state a claim under Rule 12(b)(6). Defs.' Mot. 8. First, Defendants argue that Plaintiff's claim for declaratory judgment should be dismissed because it is duplicative of Plaintiff's breach of contract claim. Second, Defendants argue that Plaintiff's breach of contract claim should be dismissed for lack of standing and for failure to state a claim. Third, Defendants argue that Plaintiff's alter ego claim should be dismissed because it is not a standalone claim. Fourth, Defendants argue that Plaintiff's tort

claims should be dismissed because Defendant Kerr cannot be liable as a matter of law and because Plaintiff has failed to state a claim for tortious interference with business relations, misappropriation of confidential information, and conversion of confidential information. Finally, Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of Plaintiff's breach of contract claim.

The Court agrees in part and dismisses, with leave to amend, Plaintiff's breach of contract and conversion of confidential information claims. In addition, the Court dismisses, with prejudice, Plaintiff's alter ego and misappropriation of confidential information claims, and Plaintiff's tortious interference with business relations claim in part. The Court declines to dismiss Plaintiff's remaining claims for declaratory judgment and unjust enrichment.

## I.    Declaratory Judgment

Defendants move to dismiss Plaintiff's request for declaratory judgment because it is duplicative of Plaintiff's breach of contract claim. Defs.' Mot. 11–12; Defs.' Reply ISO Defs.' Mot. ("Defs.' Reply") 3–6, ECF No. 37. Plaintiff responds that its request for declaratory judgment involves different proof and "seeks forward-looking clarity that will guide the parties' conduct and prevent ongoing disputes." Pl.'s Resp. Defs.' Mot. ("Pl.'s Resp.") 6–9, ECF No. 35. The Court agrees with Plaintiff and finds that Plaintiff has stated a claim for relief.

Under the Declaratory Judgment Act ("DJA"), "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added). The DJA has two requirements. First, the lawsuit seeking declaratory relief must "present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution" and "fulfill statutory jurisdictional prerequisites."

*Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222–23 (9th Cir. 1998). Second, the court "must decide whether to exercise that jurisdiction." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143–44 (9th Cir. 1994). In deciding whether to exercise jurisdiction, the court considers many factors, including the "risk [of] duplicative litigation . . . ." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011); *see also Am. States Ins. Co.*, 15 F.3d at 144 ("[T]he district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991))).

Here, the parties dispute the second prong—whether the Court should exercise its jurisdiction to hear Plaintiff's request for declaratory judgment.[2] The Court finds *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936 (9th Cir. 2025), instructive. In *Siino*, following the lapse of a life insurance policy, the plaintiff brought claims for declaratory relief and breach of contract. *Id.* at 940–41. The plaintiff's request for declaratory relief specifically sought a declaration that the defendant failed to comply with pretermination notice statutes, that her life insurance policy remained enforceable, and that she was not required to pay back missed premiums. *Id.* at 941. By contrast, the plaintiff's breach of contract claim sought damages based on the defendant's violations of her life insurance policy. *Id.* at 944. The Ninth Circuit ultimately upheld the district court's decision to exercise jurisdiction over the request for declaratory relief. *Id.* at 943. The court reasoned that simultaneous adjudication of both claims present a low risk of duplicative litigation because they "answer different questions and turn on different considerations." *Id.* at 944 (finding the plaintiff's "declaratory relief claim concerns her

---

[2] Although the parties do not dispute the first prong, the Court finds that Plaintiff's Amended Complaint presents an actual case or controversy and satisfies statutory jurisdictional prerequisites. There is a "definite and concrete" controversy, *see Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937), and Plaintiff's Amended Complaint is premised on diversity jurisdiction, Am. Compl. ¶ 19; 28 U.S.C. § 1332(a)(1).

entitlement to a legal declaration of her rights and obligations[,]" whereas the "breach of contract claim concerns her entitlement to damages"). Further, the court reasoned that the request for declaratory relief involved "future obligations of the parties, an issue that would not be addressed by [the plaintiff's] breach of contract claim." *Id.*

Here, similarly, Plaintiff's request for declaratory judgment answers different questions and turns on different considerations than Plaintiff's breach of contract claim. Plaintiff's request for declaratory judgment seeks, among other things, an order that the Due Diligence Agreement prohibits, for a period of five years, "the hiring of any Person employed by PIW with whom KCI had contact as part of its evaluation or investigation[,]" the use of PIW's Confidential Information for any purpose other than in connection with KCI's evaluation, and the use of PIW's Confidential Information to solicit PIW customers for products or services that PIW manufactures, markets, or provides. Am. Compl. ¶ 97. By contrast, Plaintiff's breach of contract claim alleges that Defendants breached the Agreement by using PIW's Confidential Information to recruit and hire PIW employees and solicit PIW customers, and by directing OMAF to engage in conduct prohibited under the Agreement. *Id.* ¶ 120. Although these claims may be slightly duplicative in that they both rely on interpretations of the Agreement, the Court finds that "adjudication of both could serve a useful purpose in clarifying the legal relations at issue." *Siino*, 133 F.4th at 944 (internal quotation marks omitted). For instance, Plaintiff's breach of contract claim "concerns [Plaintiff's] entitlement to damages[,]" whereas Plaintiff's request for declaratory judgment "concerns [Plaintiff's] entitlement to a legal declaration of . . . rights and obligations . . . ." *Id.* Moreover, Plaintiff's request for declaratory judgment speaks to future obligations and, "for this reason alone, the adjudication of [Plaintiff's] declaratory relief claim would not be a waste of judicial resources." *Id.* Accordingly, the Court declines to dismiss

Plaintiff's request for declaratory judgment. *Contra Ness & Campbell Crane, Inc. v. Kleppe*, No. 3:17-CV-01865-HZ, 2018 WL 1702049, at *7 (D. Or. Apr. 5, 2018) (dismissing the plaintiff's request for declaratory relief—in light of the plaintiff's breach of contract claim—because it sought a declaration that the defendant breached provisions of the contract).

## II.    Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claim because Plaintiff lacks standing and, to the extent Plaintiff has standing, Plaintiff fails to allege facts sufficient to support its claim. Defs.' Mot. 14–24; Defs.' Reply 6–10. Plaintiff responds it properly asserts a breach of contract claim as to all Defendants. Pl.'s Resp. 9–15. The Court finds that Plaintiff alleges standing and Defendants' liability; however, the Court finds that Plaintiff has not stated a claim for breach of contract as to the wrongful hiring of Vanderveen or to the wrongful solicitation of PIW customers. Accordingly, the Court dismisses in part Plaintiff's breach of contract claim with leave to amend.

### A.    Standing[3]

Defendants argue that the Court should dismiss Plaintiff's breach of contract claim because Plaintiff lacks standing to enforce the Due Diligence Agreement. Defs.' Mot. 14–16; Defs.' Reply 6–7. Specifically, Defendants claim that Plaintiff cannot enforce the Agreement because it is not a party to the Agreement nor a third-party beneficiary. Defs.' Mot. 16. Plaintiff responds that it alleges standing because it acquired all of "PIW's assets, properties, goodwill,

---

[3] The Court understands the parties' arguments regarding standing as whether Plaintiff can enforce the Due Diligence Agreement, not whether Plaintiff has satisfied the constitutional requirement. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Nonetheless, for consistency, the Court refers to this issue as standing.

and rights, *including the rights and benefits in the Due Diligence Agreement*" when it purchased PIW. Pl.'s Resp. 10 (quoting Am. Compl. ¶¶ 53, 92). The Court finds that Plaintiff alleges standing.

Under Oregon law, "[a]s a general rule, contracts and the rights growing out of them are assignable." *Folquet v. Woodburn Pub. Schs.*, 146 Or. 339, 341, 29 P.2d 554 (1934). There is an exception, however, if the contract stipulates against assignment. *Id.* at 341–42 ("[I]f a contract . . . contains a stipulation against assignment . . . it comes within the exception to the general rule and is not assignable."). Here, examining the "text" of the Agreement—specifically section 10—"in the context of the document as a whole[,]" the Court finds that the Agreement does not stipulate against assignment. *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019 (1997). Rather, the Agreement unambiguously contemplates assignment: "This Agreement is intended solely for the benefit of the parties hereto and [PIW] and their respective successors and *assigns*." Due Diligence Agreement § 10 (emphasis added); *see also Yogman*, 325 Or. at 361 ("In the absence of ambiguity, the court construes the words of a contract as a matter of law." (quoting *Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 405, 900 P.2d 475 (1995))). Accordingly, the Court finds that Plaintiff's allegation that it was assigned PIW's rights under the Due Diligence Agreement, Am. Compl. ¶¶ 53, 55, is sufficient to allege it has standing to enforce the Agreement. The Court thus declines to dismiss Plaintiff's breach of contract claim for lack of standing.

B.    Defendant Kerr

Defendants argue that the Court should dismiss Plaintiff's breach of contract claim against Kerr because he was acting in his representative capacity as president of KCI when he allegedly breached the Due Diligence Agreement. Defs.' Mot. 16–17; Defs.' Reply 7–8. Plaintiff

responds that Kerr may still be liable for his own personal misconduct notwithstanding his position at KCI. Pl.'s Resp. 10–11. The Court agrees with Plaintiff.

Under the Agreement, "Associated Persons receiving [PIW's] Confidential Information shall be bound by and subject to [the] Agreement to the same extent and effect as [KCI]." Due Diligence Agreement § 3(B). An Associated Person includes KCI's "shareholders, directors, officers, employees, agents, partners and advisors . . . ." *Id.* § 2. Here, as president of KCI, Kerr is an Associated Person. *See* Am. Compl. ¶ 15 ("Kerr is identified as the President of KCI . . . with the Oregon Secretary of State."); Defs.' Mot. 16 (admitting Kerr is an Associated Person of KCI). Thus, if Kerr received PIW's Confidential Information, he is bound by the Agreement to the same extent as KCI. Here, Plaintiff alleges Kerr received PIW's Confidential Information. *See id.* ¶ 49 ("Kerr was involved in KCI's evaluation of PIW [and] received and reviewed PIW's Confidential Information . . . ."). Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim against Kerr because Plaintiff alleges that Kerr may be personally liable for breaching the Agreement.

C.    Defendant OMAF

Defendants argue that the Court should dismiss Plaintiff's breach of contract claim against OMAF because it is not an Associated Person under the Agreement, Defs.' Mot. 17–20, and because Plaintiff fails to allege it is an alter ego of KCI, Defs.' Reply 9. Plaintiff responds that it does not contend that OMAF is an Associated Person; rather, Plaintiff argues that OMAF may be liable as an alter ego of KCI. Pl.'s Mot. 11–12. The Court agrees with Plaintiff and finds it alleges that OMAF is an alter ego of KCI.

"Under Oregon law, a party advancing an alter ego theory must make a prima facie showing that an entity is the alter ego of another." *Barrie v. NFH Oregon, LLC*, No. 6:20-CV-

01038-MC, 2020 WL 9211003, at *5 (D. Or. Nov. 4, 2020); *see also State ex rel. Neidig v. Superior Nat'l Ins. Co.*, 343 Or. 434, 454, 173 P.3d 123 (2007) ("[T]his court's cases make it clear that veil piercing also may apply to claims against affiliated corporations."); *Abbott v. Bob's U-Drive*, 222 Or. 147, 161–62, 352 P.2d 598 (1960) ("It is well established that where corporate affairs are confused with those of . . . an affiliate corporation the corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device."). The proponent must show that (1) another entity was "under common control" with the corporation, (2) "the other entity used its control over the corporation to engage in improper conduct," and (3) "as a result of the improper conduct, the plaintiff was harmed." *State ex rel. Neidig*, 343 Or. at 454–55. "[E]ach part of the test—control, wrongful conduct, and causation—can present close legal and factual questions that must be considered in reaching the ultimate equitable determination as to whether the corporate veil can be pierced." *Id.* at 455. The Court addresses each element in turn.

i.    Common Control

To establish common control, Plaintiff must demonstrate that KCI and OMAF "were under the common control of a third party . . . ." *Id.* Here, Plaintiff does. First, Plaintiff alleges that KCI and OMAF have the same president—Kerr. Am. Compl. ¶ 15. Second, Plaintiff alleges that Kerr "at all times relevant for the allegations in this Amended Complaint . . . exercised complete control over the operations and decision-making of" KCI and OMAF. *Id.* ¶ 124. Third, Plaintiff alleges that KCI and OMAF maintain "overlapping officers, offices, employees, registered agent, and business functions." *Id.* ¶ 125. The Court finds these allegations are sufficient for it to reasonably infer that KCI and OMAF were under common control. *See, e.g.*,

*Barrie*, 2020 WL 9211003, at *5 (finding control where business filings showed that the plaintiff was one of two corporate governors).

        ii.      Wrongful Conduct

To establish wrongful conduct, Plaintiff must demonstrate that KCI and OMAF engaged in "dishonest or deceitful conduct intended to harm a third party, whether or not that conduct violates a statute or other legal obligation." *State ex rel. Neidig*, 343 Or. at 459. Here, Plaintiff alleges that OMAF was created to circumvent KCI's contractual obligations under the Due Diligence Agreement—specifically KCI's duty to refrain from hiring PIW employees whom KCI had contact with, or learned of, during its evaluation of PIW, and from using PIW's Confidential Information, including PIW's personnel, to solicit PIW customers. Am. Compl. ¶¶ 126–27, 129–31. The Court finds these allegations are sufficient for it to reasonably infer that KCI and OMAF engaged in wrongful conduct. *See, e.g.*, *Barrie*, 2020 WL 9211003, at *5 (finding wrongful conduct where the plaintiff used the corporate form to shield loan collateral).

        iii.     Causation

To establish causation, Plaintiff must demonstrate there is a connection between KCI and OMAF's wrongful conduct and Plaintiff's harm. *State ex rel. Neidig*, 343 Or. at 463. Here, Plaintiff alleges that since OMAF was created, it has lost three employees to OMAF, including its long-time general manager—Westling. Am. Compl. ¶¶ 129–30. Moreover, Plaintiff alleges it has lost business from OMAF's solicitation of Plaintiff's customers. *Id.* ¶ 131. The Court finds these allegations are sufficient for it to reasonably infer that KCI and OMAF's wrongful conduct has harmed Plaintiff. *See, e.g.*, *Barrie*, 2020 WL 9211003, at *5 (finding causation where the

plaintiff's use of the corporate form to shield loan collateral caused harm to the defendants in the form of "the time and expense of litigation").

***

In sum, because Plaintiff's allegations allow the Court to reasonably infer that KCI and OMAF are under common control and engaged in wrongful conduct that harmed Plaintiff, the Court finds that Plaintiff states a claim against OMAF under an alter ego theory. Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim against OMAF.[4]

D.    Protected Interest

Defendants argue that the Court should dismiss Plaintiff's breach of contract claim as to OMAF's hiring of the Employees because Plaintiff does not have a protected interest in the Employees. Defs.' Mot. 20–22; Defs.' Reply 9–10. Plaintiff responds that it holds a protectable interest in the Employees. Pl.'s Resp. 12–13. The Court finds that Plaintiff alleges a protectable interest in Westling and Cuddeford but not Vanderveen.

Section 6 of the Due Diligence Agreement prohibits KCI, during the Confidentiality Term, from hiring or offering to hire, "whether as an employee or consultant, any person employed by [PIW] with whom [KCI] had contact as part of its evaluation or investigation of [PIW] or whose identity is included in the Confidential Information . . . ." Due Diligence Agreement § 6. Here, the Court finds that Plaintiff alleges a breach of this provision as to each of the Employees. First, as to Westling, Plaintiff alleges that Westling had contact with KCI during KCI's evaluation of PIW, Am. Compl. ¶¶ 48–49, and that OMAF later hired Westling, *id.* ¶ 62.

---

[4] To the extent Plaintiff claims that OMAF is also an alter ego of Kerr, the Court finds that Plaintiff's allegations are sufficient. Plaintiff alleges that Kerr controls OMAF, *see* Am. Compl. ¶ 15 (Kerr is the president of OMAF), Kerr used his control over OMAF to circumvent his obligations under the Agreement, *see id.* ¶ 126, and such wrongful conduct harmed Plaintiff, *see id.* ¶¶ 129–31.

Second, as to Vanderveen, Plaintiff alleges that Vanderveen's identity was included in PIW's Confidential Information, *id.* ¶ 50, and that OMAF later hired Vanderveen, *id.* ¶ 68. Lastly, as to Cuddeford, Plaintiff alleges that Cuddeford's identity was included in PIW's Confidential Information, *id.* ¶ 50, and that OMAF later hired Cuddeford, *id.* ¶ 80. Thus, the Court finds that Plaintiff states a claim for breach of contract under section 6 of the Agreement.

Nonetheless, Defendants argue that the exception in section 6 bars Plaintiff's claims:

> The foregoing restriction shall not preclude [KCI] from employing any employee who (x) has been given notice of termination by [PIW] or chooses to leave the employment of [PIW], in either case without any prior communication with [KCI] respecting employment, and who makes an unsolicited approach to [KCI] with a view of obtaining employment . . . .

Due Diligence Agreement § 6. Defendants claim this exception applies because (1) the Employees were presumptively terminated when Plaintiff purchased PIW and (2) Plaintiff fails to allege facts showing that KCI communicated with the Employees regarding employment or that the Employees made a solicited approach to KCI. Defs.' Mot. 21–22. The Court agrees in part.

As to the first prong—whether the Employees were given notice of termination or chose to leave the employment of PIW—the Court finds that the Employees left employment at PIW. *See* Am. Compl. ¶ 60 (Westling leaving); *id.* ¶¶ 68–69 (Vanderveen leaving); *id.* ¶ 79 (Cuddeford leaving).[5]

As to the second prong the Court agrees with Defendants only as to Vanderveen. Plaintiff alleges, on "information and belief," that Vanderveen chose to leave employment with Plaintiff after prior communications with KCI respecting employment. *Id.* ¶ 69. However, Plaintiff's

---

[5] The Court finds this notwithstanding Defendants' presumptive termination argument. *See* Defs.' Mot. 21; Defs.' Reply 9–10. Regardless of whether the Employees were employed by PIW or Plaintiff at the time of their resignation, they chose to leave their employment.

allegations are devoid of any facts showing communication between KCI and Vanderveen. By contrast, Plaintiff alleges that KCI communicated with Westling and Cuddeford. *See id.* ¶ 48–49 (Westling was in contact with KCI and Kerr during the due diligence process); *id.* ¶ 78 (Cuddeford visited OMAF's shop to provide advice on where to place machines). Consequently, from these allegations, the Court can reasonably infer that KCI may have had conversations with Westling and Cuddeford respecting employment or solicited their employment; the Court cannot infer the same for Vanderveen. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (pleading facts upon information and belief is permissible "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible" (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010))).

Accordingly, because Plaintiff has not plausibly alleged that KCI communicated with Vanderveen, Plaintiff has failed to allege that it has a protectable interest Vanderveen. The Court dismisses Plaintiff's breach of contract claim as to the wrongful hiring of Vanderveen with leave to amend.

E.    Information and Belief

Lastly, Defendants argue that the Court should dismiss Plaintiff's breach of contract claim altogether because Plaintiff's allegations are conclusory and inappropriately rely upon information and belief. Defs.' Mot. 22–24. Plaintiff responds that its allegations are sufficient. Pl.'s Resp. 13–15. The Court agrees with Defendants in part.

"[T]o state a claim for breach of contract, a plaintiff must . . . allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff."

*Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275, 564 P.3d 142 (2025). Here, Plaintiff pleads facts that establish the existence of a contract and its relevant terms. *See* Due Diligence Agreement (the contract and terms at issue). Whether Plaintiff's remaining allegations are sufficient for the Court reasonably infer that Defendants breached the Due Diligence Agreement, however, is a closer call.

First, Plaintiff alleges that Defendants breached the Agreement "by using PIW's Confidential Information to recruit and hire PIW's former employees . . . ." Am. Compl. ¶ 120. As previously discussed, the Court finds that Plaintiff states a claim as to Westling and Cuddeford but not Vanderveen. *See* Discussion, *supra* Section II.D. Accordingly, Plaintiff's breach of contract claim as to conduct relating to Vanderveen is dismissed with leave to amend.

Second, Plaintiff alleges that Defendants breached the Agreement by using PIW's Confidential Information to solicit PIW's customers. Am. Compl. ¶ 120. Here, the Court finds that Plaintiff's allegations are insufficient because they "do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." *Iqbal*, 556 U.S. at 679. Other than alleging that "Westling advertised repair work in the OMAF shop from a" customer of PIW and Plaintiff, Am. Compl. ¶ 82, Plaintiff fails to allege facts which support its allegations of "lost business and opportunities from customers," *id.* ¶ 121, which "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's breach of contract claim as to this conduct is dismissed with leave to amend.

Finally, Plaintiff alleges that Defendants breached the Agreement by "permitting and directing OMAF to engage in conduct that the Due Diligence Agreement expressly prohibited" Kerr and KCI from undertaking. Am. Compl. ¶ 120. The Court finds that this allegation largely

depends on Plaintiff's other breach of contract allegations and thus dismisses Plaintiff's breach

of contract claim as to this issue with leave to amend.

## III.     Alter Ego

Defendants move to dismiss Plaintiff's alter ego claim because it is not a standalone

claim. Defs.' Mot. 25. Plaintiff responds that dismissal is not warranted considering the relevant

legal principles. Pl.'s Resp. 15–16. The Court agrees with Defendants and dismisses Plaintiff's

alter ego claim with prejudice.

"[A]lter ego is not a stand-alone claim, but is a means of obtaining relief for the wrongful

conduct of a corporate entity from parties otherwise shielded by the corporate veil." *Towne v.*

*Robbins*, No. CIV.CV02-1688-MO, 2005 WL 139077, at *5 (D. Or. Jan. 20, 2005); *accord*

*Nations Fund I, LLC v. Westward Mgmt. Co., LLC*, No. 6:20-CV-00498-AA, 2021 WL 4491712,

at *4 (D. Or. Sept. 30, 2021). Therefore, to the extent Plaintiff asserts a standalone alter ego

claim, the Court dismisses it with prejudice. The Court, however, finds that Plaintiff alleges an

alter ego theory of liability as to OMAF. *See* Discussion, *supra* Section II.C.

## IV.     Tort Claims

Defendants move to dismiss Plaintiff's claims for tortious interference with business

relations, misappropriation of confidential information, and conversion of confidential

information. Defs.' Mot. 30–38; Defs.' Reply 11–15. The Court dismisses in part Plaintiff's

tortious interference with business relations claim with prejudice, Plaintiff's misappropriation of

confidential information claim with prejudice, and Plaintiff's conversion of confidential

information claim with leave to amend.

///

///

A.    Defendant Kerr

As an initial matter, Defendants argue that the Court should dismiss all tort claims against Kerr in his individual capacity because he was acting as president of KCI and for the benefit of KCI and is thus protected from liability. Defs.' Mot. 29–30. Plaintiff responds that Kerr may still be liable because "it is his own actions that are the basis for his personal liability." Pl.'s Resp. 17. The Court agrees with Plaintiff and declines to dismiss Plaintiff's tort claims against Kerr altogether.

Under Oregon law:

> The fact that one is acting as a corporate representative does not insulate him or her from individual liability for his or her tortious acts. In other words, if an officer or agent of the corporation through his or her own fault injures another to whom he or she owes a personal duty, that officer or agent is personally liable to the injured third party regardless of whether the act resulting in injury is committed by or for the corporation. It does not matter that liability might also attach to the corporation. Personal liability attached, regardless of whether the breach was through malfeasance, misfeasance or nonfeasance.

*Fields v. Jantec, Inc.*, 317 Or. 432, 438, 857 P.2d 95 (1993) (citation modified) (quoting 3A Fletcher Cyclopedia of the Law of Private Corporations § 1135 (1986 ed. & Supp. 1992 at 66–67)). Under this principle, the Court finds that Kerr may be personally liable in tort notwithstanding his position as president of KCI. The Court declines to dismiss Plaintiff's tort claims against Kerr altogether.

B.    Tortious Interference with Business Relations

Defendants move to dismiss Plaintiff's tortious interference with business relations claim because Defendants were parties to the Due Diligence Agreement and Plaintiff's allegations are conclusory. Defs.' Mot. 30–32; Defs.' Reply 11–12. The Court agrees in part and dismisses Plaintiff's claim, as to KCI and Kerr's alleged interference with the Due Diligence Agreement, with prejudice.

20 – OPINION & ORDER

Tortious interference with business relations is a claim referring to "tortious conduct, independent of a contract, that brings about a breach of that contract." *Adelsperger v. Elkside Dev. LLC*, 371 Or. 61, 73, 529 P.3d 230 (2023). To state a claim, Plaintiff must allege: "(1) the existence of a professional or business relationship, (2) intentional interference by the third party with the relationship, (3) that the interference was accomplished through improper means or for an improper purpose, (4) the interference caused damage to the economic relationship, and (5) damages." *Id.* A party to a contract, however, cannot be liable for interfering with that contract. *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 625–26, 733 P.2d 430 (1987).

First, to the extent Plaintiff alleges that Defendants KCI and Kerr tortiously interfered with the Due Diligence Agreement, the Court finds that such claim is barred because they are parties to the Agreement: Defendant KCI is a party to the Agreement, *see* Due Diligence Agreement, and Defendant Kerr is a party to the Agreement as an Associated Person, *see* Discussion, *supra* Section II.B. The Court, however, declines to dismiss Plaintiff's claim against Defendant OMAF at this time. Although OMAF may be liable for breaches of the Agreement under an alter ego theory, *see* Discussion, *supra* Section II.C, the Court finds it inappropriate at this time to further find that OMAF is a party to the Agreement.

Second, to the extent Plaintiff alleges that Defendants tortiously interfered with the Employment Agreements, the Court finds that Plaintiff states a claim for relief against all Defendants. First, Plaintiff alleges there is a professional or business relationship between it and the Employees. *See* Am. Compl. Exs. 2–4 (the Employment Agreements). Second, Plaintiff alleges that Defendants—as third parties to the relationships—intentionally interfered with the relationships by hiring the Employees and facilitating the breach of their Employment Agreements. Am. Compl. ¶¶ 151–52. Third, Plaintiff alleges that Defendants' interference was

accomplished (1) through improper means, by creating a separate corporate entity to evade contractual restrictions under the Agreement, and (2) with the improper purpose of harming Plaintiff's business. *Id.* ¶ 154; *see Meyer v. Mittal*, No. 3:21-CV-00621-HZ, 2024 WL 385129, at *23 (D. Or. Feb. 1, 2024) ("An improper purpose can be established if the defendant intended to harm the plaintiff." (citing *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 205, 582 P.2d 1365 (1978))). Fourth, Plaintiff alleges that Defendants' interference caused damage to the economic relationship. Am. Compl. ¶ 155. Lastly, Plaintiff alleges damages, including the "loss of employees, loss of customers, lost revenues, and damage to business goodwill." *Id.*

Accordingly, the Court dismisses Plaintiff's tortious interference with business relations claim in part. To the extent Plaintiff alleges that Defendants KCI and Kerr interfered with the Due Diligence Agreement, such claim is dismissed with prejudice. However, Plaintiff may maintain its interference claim against OMAF as to the Due Diligence Agreement and all Defendants as to the Employment Agreements.

### C.    Misappropriation of Confidential Information

Defendants move to dismiss Plaintiff's misappropriation of confidential information claim because Plaintiff fails to allege that it expends "substantial time, effort, and money" on its confidential information and because Plaintiff's allegations are conclusory. Defs.' Mot. 32–34; Defs.' Reply 12–13. Plaintiff responds that its allegations are sufficient as is. Pl.'s Resp. 19. The Court finds that, notwithstanding the parties' arguments, Plaintiff's claim is preempted by the Oregon Uniform Trade Secrets Act ("OUTSA"). Accordingly, the Court dismisses Plaintiff's misappropriation of confidential information claim with prejudice.

Under Oregon Revised Statute § ("ORS") 646.473(1), the OUTSA "supersede[s] conflicting tort, restitution or other law of Oregon providing civil remedies for misappropriation

of a trade secret." Oregon courts have not yet interpreted this statute; however district courts have, finding that the OUTSA preempts "claims that are based on the same operative facts as a claim for trade secret misappropriation . . . ." *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004). The key inquiry is whether "the essence of the claim relates primarily to the alleged misappropriation of a trade secret . . . ." *Id.*

For example, in *Skylar Haley LP v. Meduri Farms, Inc.*, No. CIV. 09-965-JO, 2010 WL 3853184, at *1 (D. Or. Sept. 27, 2010), the plaintiff brought claims for, among other things, misappropriation of trade secrets under the OUTSA and common law misappropriation of confidential information. The defendant moved for partial summary judgment, arguing that the plaintiff's misappropriation of confidential information claim was preempted by the OUTSA. *Id.* The district court agreed, reasoning that the two claims "derive from the same set of operative facts." *Id.* at *2.

Here, similarly, the Court finds that the essence of Plaintiff's misappropriation of confidential information claim relates primarily to a claim for misappropriation of trade secrets under the OUTSA. First, Plaintiff's purported confidential information fits the OUTSA's definition of a trade secret. *Compare* Am. Compl. ¶ 162 (defining Plaintiff's confidential information as "finances, plans, personnel, identities and contact information of key PIW employees, PIW's business strategies, pricing and methods of servicing its customers, customer lists, and operations of PIW not generally known to the public or in the industry"), *with* ORS 646.461(4) (defining trade secret as "information, including a . . . cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that . . . [d]erives independent economic value . . . from not being generally known to the public" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). Second,

Plaintiff's misappropriation allegations necessarily involve the same operative facts as a misappropriation of trade secret claim. *Compare* Am. Compl. ¶ 163 (alleging that Defendants misappropriated Plaintiff's confidential information by using it to recruit PIW employees and solicit PIW customers), *with* ORS 646.461(2) (defining misappropriation as the "use of a trade secret of another without . . . consent by a person who used improper means to acquire knowledge of the trade secret"). Accordingly, the Court finds that Plaintiff's claim for misappropriation of confidential information is preempted by the OUTSA and dismisses it with prejudice.

        D.       Conversion of Confidential Information

Defendants move to dismiss Plaintiff's conversion of confidential information claim because Plaintiff fails to identify an actual chattel at issue. Defs.' Mot. 34–35; Defs.' Reply 14–15. Plaintiff responds that its Confidential Information is a chattel. Pl.'s Resp. 19–20. The Court agrees with Defendants and dismisses this claim with leave to amend.

Under Oregon law, "[t]o succeed in a conversion claim, the plaintiff must prove 'an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel.'" *Cron v. Zimmer*, 255 Or. App. 114, 128, 296 P.3d 567 (2013) (quoting *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004 (1969)).

Here, Plaintiff alleges that Defendants converted PIW's Confidential Information, "including but not limited to identities and contact information of PIW's key employees and personnel, identities of PIW's customers, PIW's pricing information, business methods and strategies, and internal reports, analyses and data prepared for the due diligence review." Am. Compl. ¶ 171. The Court finds that, regardless of whether such information constitutes a

protectable chattel, Plaintiff must be more specific in its allegations—Plaintiff must specify which items of Confidential Information Defendant has allegedly converted. *See e.g.*, *Joe Hand Promotions, Inc. v. Jacobson*, 874 F. Supp. 2d 1010, 1021 (D. Or. 2012) (asserting conversion of a broadcast signal containing a television program); *Coultas v. Liberty Mut. Fire Ins. Co.*, No. 3:15-CV-0237-PK, 2015 WL 2376003, at *3 (D. Or. May 18, 2015) (asserting conversion of the right to sue); *Lyden v. Nike Inc.*, No. 3:13-CV-00662-HZ, 2013 WL 5729727, at *4 (D. Or. Oct. 22, 2013) (asserting conversion of patent rights). Accordingly, the Court dismisses Plaintiff's conversion of confidential information claim with leave to amend.

## V.     Unjust Enrichment

Defendants move to dismiss Plaintiff's unjust enrichment claim because Plaintiff fails to allege it conferred a benefit on OMAF or that KCI and Kerr received any benefit from the Confidential Information. Defs.' Mot. 38–39; Defs.' Reply 15. Plaintiff responds that it may maintain an unjust enrichment claim at this pleading stage. Pl.'s Resp. 20–21. The Court agrees with Plaintiff and declines to dismiss Plaintiff's unjust enrichment claim.

Under Oregon law, "[i]t is proper for a party to plead counts in contract and in Quantum meruit covering the same course of events in complaint." *Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48, 602 P.2d 294 (1979) (citing former ORS 16.221), *aff'd*, 289 Or. 589, 616 P.2d 468 (1980). "Such alternative pleading may be beneficial . . . where the pleader is unsure of whether it can actually prove the existence of the contract at trial." *Id.* Here, given the parties' dispute over the enforceability of the Due Diligence Agreement against Defendants, the Court declines to dismiss Plaintiff's unjust enrichment claim at this time.

///

///

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss for Failure to State a Claim [29]. Plaintiff's alter ego and misappropriation of confidential information claims are dismissed with prejudice, and Plaintiff's tortious interference with business relations claim is dismissed with prejudice in part. Plaintiff shall file a Second Amended Complaint curing the deficiencies identified herein within twenty-one (21) days of this Opinion & Order.

IT IS SO ORDERED.

DATED this 7th day of January, 2026.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge